36158. MERRIWEATHER *v.* THE STATE.

DECIDED APRIL 11, 1956.

*Frank C. Vann,* for plaintiff in error.

CARLISLE, J. Upon his trial under an indictment charging him with the murder of John Cherry, alias Field Cherry, the defendant was found guilty of voluntary manslaughter and sentenced to a term of from 18 to 20 years in the penitentiary. His motion for a new trial, based upon the usual general grounds and 3 special grounds, was denied, and he has brought the present writ of error to have that judgment reviewed.

■ It appears from the evidence and the defendant's statement that Cherry had had some altercation with the defendant's aged mother, in which the deceased pushed the mother and caused her to fall. Though the defendant was not present on that occasion, he was apprised of the incident. When the defendant chanced to encounter Cherry later, he asked Cherry, "You the one that pushed my mama down?" Cherry replied, "I didn't push her down. I was inside the door. She walked to the door and tried to push me up in there and I shoved her down." With this reply Cherry put his hand in his pocket and backed two or three steps into a "fighting stance." The defendant thereupon advanced upon him and stabbed Cherry in the chest. Cherry died from that stab wound almost instantly. The defendant in his statement to the jury admitted the homicide, but stated that

he had once been shot in the head in that same vicinity, and that when he asked Cherry about pushing his mother down, Cherry replied, "What the hell you want to do about it?" and when Cherry put his hand in his pocket, he feared for his life, believing Cherry was going to kill him, and he struck Cherry the one blow with his knife. He then walked away and some time later had the police come and arrest him. Cherry had been seen earlier on the day of the homicide by another witness to be in possession of a knife, but no knife was found on his person following his death. This evidence was sufficient to authorize the verdict of voluntary manslaughter, as the jury could have inferred that the defendant and Cherry were engaged in mutual combat at the time the fatal blow was struck. *Harris* v. *State*, 2 *Ga. App.* 487 (58 S. E. 680) ; *Johnson* v. *State*, 4 *Ga. App.* 59 (60 S. E. 813).

■ In special ground 1 error is assigned upon the illegal admission of the following testimony of the witness, John C. Bowman: "I saw Proverb's sister come in the pool room while the Cherry boy was there. That was that afternoon. That night when I got back to town the boy was dead. I figure the time I saw the Cherry Boy in the pool room and Proverb's sister came in there was in the afternoon around about 5 or 6 or something like that. She just came in there and asked him was he the one that pushed her mother down—he was shooting pool—and he just said 'not him'—so they went on out the back door. Both of them. One went one way and one the other. He was shooting pool and Proverb's sister came in and said, 'are you the one that pushed my mother down?' And he said, 'it wasn't me'. He went on up the street and I ain't seen him no more til-after I heard he had done got killed. The girl had a coca-cola bottle. She put it down. He had a cue stick and she had had the bottle up. She was holding the bottle by the neck, up like that. That is what I would call drawed back."

In special ground 2 error is assigned upon the refusal of the trial court to grant a mistrial on account of the admission of this same irrelevant evidence of which complaint is made in special ground 1.

The erroneous admission of irrelevant evidence is not cause for a new trial where evidence of the same character and import are admitted without objection. *Trawick* v. *Chambliss*, 42 *Ga. App.* 333 (156 S. E. 268), and cit.

Artie C. Keys testified that, about 4 or 5 o'clock on the afternoon of the day of the homicide, "The ones I saw talking were my wife and the Cherry boy and my mother-in-law—that's all I seen there, and I looked back at her and said, 'Don't you go up on that man—he got a knife,' and I kept on walking. My wife is Proverb's sister. My wife and her mama was talking to the Cherry boy. I don't know if they were getting into mischief. When I seen them they was all standing there talking. I don't know what they had done before I got along there, cause I didn't tarry cause I was trying to get out the way cause I'm not looking for trouble. I reckon that they were sure mad. I was passing. I didn't stop. I·wasn't going to stop there. I wasn't going to get mixed up in it. I won't gone do their fighting for them. If anybody was going to get cut, I wanted it to be somebody else's hide besides mine—don't tear my hide—tear somebody else's. I don't know what they did to cause him to have to get out his knife. I don't know nothing about that. You'll have to see them about that. They can tell you. I don't know what the women folks were saying to him. When I got there all of them was backing up and running backwards—I don't know what they was saying. I was trying to get by there hard as I could. There was a big ruckus going on between those three. As to what I know what it about, I don't know cause I wasn't there at the starting. It wasn't my wife who got the bottle after him down there in the pool room. Proverb has about 7 sisters, I think. I think it was another sister that got the bottle after him in the pool room. It wasn't none of mine—my wife was home. I don't know nothing bout one sister getting after him in the pool room and another sister—my wife, and her mother got after him down by the railroad track, and then Proverb got after him at the time he got killed." There is no merit in special grounds 1 and 2.

■ Grounds of a motion for new trial which are expressly abandoned in this court either in the brief or oral argument of counsel are to be treated as abandoned. Code § 6-1308. Special ground 3 of the motion for new trial comes within this rule and will not be considered. The ground was expressly abandoned by counsel for the defendant in his oral argument in this court.

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*